**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| JEROME DAMASCO, individually and on behalf of a class of similarly situated individuals, | ) ) ) | |
| *Plaintiff*, | ) ) | No. 10-CV-03063 |
| v. | ) ) | Hon. James B. Zagel |
| CLEARWIRE CORPORATION, a Delaware Corporation. | ) ) ) | |
| *Defendant*. | ) ) | |

<u>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION**</u>

Plaintiff Jerome Damasco ("Plaintiff") filed his Motion for Reconsideration ("Motion") against Clearwire Corporation ("Clearwire") to show that the May 14, 2010 letter from Clearwire containing a purported settlement offer (the "May 14 Letter") was not truly an "offer" capable of "acceptance" by Plaintiff, and could not therefore moot the case Plaintiff brought against Clearwire because it required subsequent action by the Defendant to create a binding agreement. In response, Clearwire attempts to argue that an identical offer made by its own counsel in a subsequent case, and the other defendant's backtracking from that offer, is irrelevant to the determination of whether Clearwire's purported "offer" could be accepted by Plaintiff.

The evidence from that other case is relevant to this Motion. Even more, however, the parallel behavior of Clearwire in <u>this</u> case shows that the purported offer in the May 14 Letter could not have been simply accepted by the Plaintiff to form a binding settlement contract. Minutes after Plaintiff filed his Motion, Clearwire made what it represented to be a reaffirmation of its earlier "settlement offer." This reaffirmed "settlement offer," however, attempted to limit the injunctive relief in the same way that the defendant in the other case attempted to limit it—to the individual plaintiff, rather than all consumers, as requested in the Complaint.

## **ARGUMENT**

The Court, in its September 2, 2010, Memorandum Opinion and Order, stated that:

> Clearwire has agreed to Damasco's demand for injunctive relief. In the Settlement Offer, Clearwire agrees that it would "cease the transmission of text messages to mobile subscribers who have not granted them permission to send text messages." Thus, it is difficult to see how the violations could reasonably be expected to recur. . . . The proposed injunctive relief in this case makes clear that neither Plaintiff <u>nor any other class of persons</u> will be subject to further violations by Defendant.

(Sep 2, 2010, Order, at 19, Dkt. 22) (emphasis added). Clearwire attempted to renew its offer in its letter of September 9, 2010 (the "September 9 Letter"), and Clearwire even asks the Court to consider its September 9, 2010 letter in its response to the Motion. But the scope of injunctive relief discussed in the September 9 Letter differs significantly from that in its May 14 Letter.

In the September 9 Letter, Clearwire states that it "is prepared to fulfill the Settlement Offer," defined therein as the offer in its May 14 Letter, but the attached "Confidential Settlement Agreement and Release" (which Clearwire neglected to attach in its Response) limits the injunctive relief—it states that "Clearwire agrees that it shall not send <u>Plaintiff</u> [defined as Jerome Damasco] any text messages which violate the Telephone Consumer Protection Act." (*See* McMorrow Decl., Ex. B, at 5). The proposed settlement agreement also contains a merger clause that would merge "any and all prior understandings" into that agreement. (*See id.* at 6).

The scope of injunctive relief in the September 9 Letter is obviously different from Clearwire's original statement in the May 14 Letter, that it, as this Court found, would agree "to cease the transmission of text messages to mobile subscribers who have not granted them permission to send text messages." (McMorrow Decl., Ex. A, at 2). This change in the scope of injunctive relief is consistent with the change in scope of injunctive relief offered by Career Education Corporation ("CEC") in the other case, *Fahey v. Career Education Corporation,*

currently docketed as 10-cv-05635 in this Court. In that case, CEC (through the same counsel) made a purported settlement offer identical to the one offered here, namely that CEC would pay the named plaintiff and any other person represented by Edelson McGuire $1,500.00 per text message and that CEC would "agree to the injunctive relief sought by Plaintiff in the complaint, namely to 'cease all wireless spam activities' which Defendant understands to mean to cease the transmission of text messages to mobile subscribers who have not granted it permission to send text messages." (*See* McMorrow Decl., Ex. C at 1-2; c*ompare* May 14 Letter, McMorrow Decl., Ex. A at 1-2).

The Defendants in these two cases retreated from the proposed injunctive relief in exactly the same way, on consecutive days. Clearwire retreated on September 9, as discussed above, and CEC retreated the same way, on September 8. On September 8, CEC's counsel contacted Plaintiff's counsel with a "revised proposed injunction" that "limited the scope of the injunction to the four individuals who were clients of your firm at the time of the filing of the Fahey lawsuit." (*See* McMorrow Decl., Ex. D, at 1; *see also id.*, at 6).

On September 30, 2010, this Court asked Counsel for CEC—point blank—whether that case was settled, and the response was not "yes," but rather "we want to work that out."

> THE COURT: Okay. Stop. Is the case settled?
> MR. WILSON: Here's the status, Your Honor: We've offered them $1,500 for each call, there were six, or text messages. And, second, they sent us a class-wide injunction. We agreed to an injunction as to each individual, we would not contact them anymore, and we got hung up on that injunction and that's where things stand. We've sent them a revised injunction and we want to work that out.

(McMorrow Decl., Ex. E, at 4). CEC continued to maintain that it did not and does not consider a contract created by the Plaintiff's acceptance letter. This means that the offer could not create a contract. *See Cobb-Alvarez v. Union Pac. Corp.*, 962 F. Supp. 1049, 1054 (N.D. Ill. 1997) (dismissing claim because plaintiffs could not have reasonably thought defendants were bound

by their acceptance where the alleged offer required further assent from defendants). On September 10, 2010, CEC requested an extension of time from this Court to respond to the Fahey Complaint so that the case could be transferred to Judge Kendall, again without mentioning anything about a settlement. (*See* Dkt. 6).

These identical reinterpretations of the original offer by each of the Defendants in these cases, sent on consecutive days, suggest two things: first, that the original offers set out in the May 14 Letter and the August 5 Letter could not simply be "accepted" by the Plaintiffs to form binding contracts of settlement; and second, even if those offers could be accepted to form binding contracts, the relief offered was less than the complete relief sought in the complaints, and therefore insufficient to moot the Plaintiffs' causes of action. These communications make clear that Defendants did not intend to offer plenary injunctive relief, instead intending the injunctive relief to be limited to only the named Plaintiffs. This means that the offers, even if accepted, were not intended to "provide Plaintiff with all the relief to which he would be entitled were he to prevail in this case" and could not have therefore "mooted Plaintiff's claim." (*See* Defendant's Response to Plaintiff's Motion for Reconsideration ("Resp.") at 1, Dkt. 27).

In an attempt to divert the Court's focus from its backtracking on the scope of the injunctive relief that was offered, Clearwire also argues that Plaintiff's evidence is inadmissible hearsay. The evidence is admissible, despite Clearwire's objection that the statements are hearsay. All of the evidence consists of correspondence by and among counsel for the various parties, which is not hearsay to begin with. Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 802. If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." Fed. R. Evid. 801 Advisory Comm. Note (*citing Emich Motors Corp. v. General*

*Motors Corp.,* 181 F.2d 70 (7th Cir. 1950), *rev'd on other grounds,* 340 U.S. 558 (1951));

*Contreras v. City of Chicago*, 920 F. Supp. 1370, 1404 n. 2 (N.D. Ill. 1996) *aff'd in part,*

*remanded in part*, 119 F.3d 1286 (7th Cir. 1997); *see Spraying Sys. Co. v. William G. Smart Co.,*

*Inc.*, 816 F. Supp. 465, 470 (N.D. Ill. 1993) (holding that testimony "being offered for purposes

of identifying *what* was said in conversations . . . not the *truth* of what was said [is] the classic

distinction between the hearsay and nonhearsay use of prior out-of-court statements").

Additionally, all of the statements are statements of a party opponent, which is not hearsay. *See*

Fed. R. Evid. 801(d)(2). Even if the statements otherwise would constitute hearsay, they would

easily fit the exception for records of regularly conducted activity. *See* Fed. R. Evid. 803(6).

As discussed in Plaintiff's Motion for Reconsideration, the presumption that Clearwire's

"offer" bound Clearwire and could be "accepted" to form a contract is the thread that binds the

analysis in this Court's September 2 opinion dismissing the case—if that thread is pulled, the

entire rationale for the opinion falls apart. (*See* Motion, at 5, Dkt. 24) The newly-discovered

evidence discussed above and in the Motion—Clearwire's September 9 Letter, CEC's September

8 email, and the statements of CEC's counsel on voice mail and in court—all show that the

Defendants in these cases did not consider their original "offers" self-executing. Even if they

may have been self-executing, the relief offered was less than complete and could not moot the

Plaintiffs' claims.

A motion to reconsider is available to correct manifest errors of law or fact or to present

newly discovered evidence. *Publisher's Resource Inc. v. Walker-David Publications, Inc.*, 762

F.2d 557, 561 (7th Cir. 1985). The evidence shown above and in the Motion sufficiently

demonstrates that the May 14 Letter could not create a power of acceptance. Additional assent

from Clearwire was always a prerequisite to any settlement contract.

An evidentiary hearing may be warranted if the Court determines that Clearwire's intent

in making its several versions of the settlement offer was unclear. Clearwire's Response itself calls into question its intent in making the purported settlement offer in its May 14 Letter. Although the Motion makes no mention of Clearwire's "intent"—it never even uses that word—Clearwire's response frames the issue in terms of what relief Clearwire intended to provide by way of its offer (*see* Resp. at 4-6, 9), and CEC's intent in making its own offer on August 5. (*See* Resp. at 9.) Because Clearwire has made its "intent" an issue in this hearing, an evidentiary hearing is necessary to determine that intent.

## CONCLUSION

For the reasons discussed above and in his Motion, Plaintiff Jerome Damasco, individually and on behalf of the putative class, respectfully requests that the Court reconsider its September 2, 2010, Memorandum Opinion and Order based on the newly-discovered evidence discussed above and in that Motion, deny the Defendant's Motion to Dismiss, and award such other and further relief as the Court deems equitable and just.

Dated: October 8, 2010

Respectfully submitted,

**JEROME DAMASCO**, *individually and on behalf of a class of similarly situated individuals*

____/s/ Michael J. McMorrow_____
One of his attorneys

Michael J. McMorrow
Ryan D. Andrews
EDELSON MCGUIRE, LLC
350 North LaSalle Street
Suite 1300
Chicago, Illinois 60654
Tel.: (312) 589-6470
Fax: (312) 589-6378

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that he caused to be served and filed Plaintiff's ***Reply in Support of Motion for Reconsideration*** electronically with the Clerk of the Court of Illinois, Northern District, Eastern Division, 219 South Dearborn Street, Chicago, Illinois and the same being accomplished via ECF this **October 8, 2010**, on:

Bart T. Murphy # 6181178          Joan Ritchey
Thomas J. Hayes                   Ice Miller LLP
Ice Miller LLP                    200 W. Madison, Ste. 3500
2300 Cabot Dr., Ste. 455          Chicago, IL 60606
Lisle, IL 60532


/s/ Michael J. McMorrow